STATE of Missouri, Respondent,

v.

August TORREGROSSA, Appellant.

No. 45890.

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 11, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Oct. 30, 1984.

Application to Transfer Denied
Dec. 18, 1984.

Norman S. London, C. John Pleban, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Dan Crawford, Jefferson City, for respondent.

### ROBERT E. WELBORN, Senior Judge.

By information in lieu of indictment, August Torregrossa was charged on three counts of attempting to receive stolen property. A jury trial resulted in a verdict of guilty on all counts. The court's judgment and sentence imposed a fine of $1,000 on Count I (attempted receiving of stolen property of a value less than $150) and concurrent two years' imprisonment on Count II and three years on Count III (attempted receiving of stolen property of a value of more than $150). The defendant appealed.

In March, 1980, the St. Louis Police Department set up a "Target Fence Unit," involving police officers who pretended to be thieves and attempted to sell property which they represented as having been stolen. About a year prior to the incidents involved in this case, Officer Michael Hampton, assigned to the Target Fence Unit, began hanging around the vicinity of 619 and 623 North Broadway in St. Louis, where appellant August Torregrossa operated a barber shop (623) and his wife a place known as "Jamies Jeans" (619). From time to time he went into the barber shop and talked to Gus to "familiarize myself with him, and him with me." The officer, in plain clothes, talked to Gus about shoes and clothes displayed for sale in the shop, but he made no offers to purchase anything.

On April 17, 1981, around 12:35 p.m., Hampton went to the barber shop. He had a tape recorder in his pocket and also had a radio transmitter which permitted other officers in a police car in the vicinity to overhear Hampton's conversation. He carried a SK–21 Pioneer cassette radio and recorder in a plastic bag. The radio was in the original box. The conversation with Gus began about shoes and Gus asked the officer how much "that radio cost." The officer replied, "Two sixty." Gus then went to wait on other customers and after a few minutes, Hampton called, "Gus, Gus, hey, Gus, Gus." Gus responded, "What?", and Hampton said "How about a bill ($100) for it?" After several minutes while Gus waited on other customers, he asked Hampton to take it out of the sack and then, at Gus's suggestion, they went into the back of the shop. Gus was reluctant to deal, apparently because he already had a similar radio-cassette. After some discussion, Gus said: "What is the cheapest you can go on this babe? Right now cash money— give me a hussle (sic) man, I really don't want it—to tell you the truth." Hampton suggested a $65 price and Gus replied: "You won't take a half a hundred real fast?" Hampton accepted the offer and told Gus: "Hey—I suppose (sic) to get a line on TVs too. Little color TVs." Gus replied: "All right, but I don't want nobody knowin' nothin'." Gus then told Hampton that he'd like to get "those television tapes you make the pictures with." Hampton said: "I don't know if he could get it. He

works at this warehouse, you know. * * * He be putting them in this bin for me * * * [I]f he can't get you one of those, I'll get a couple of those color TVs or something. * * I'll get one of those TVs and be back down here to see you, about next week sometime." Gus replied: "Okay. You know that I don't want to do business with a guy that snitches, man." Gus told Hampton: "You know what I want. I'll pay good money for it, too. The thing that takes pictures from TV." Hampton replied: "[I]f he could rip me one I'll get it, you know, and run down here." Gus got $50 from the cash register and gave it to Hampton.

Hampton returned to Gus's shop on April 20, 1981, with recording equipment as on the prior visit. He told Gus that he had a 10-inch Quasar television, which he had left in the trunk of his auto. Hampton told Gus that he was going to try to get $150 for the television and that dude is going to try to rip me one of those "video things." Gus gave Hampton a blue coat and asked him to cover the TV with it and bring it from the car to the jean shop. Hampton brought the TV into the back room of the jean shop. Gus asked Hampton his cheapest price. Hampton said $125. Gus offered $100 and Hampton accepted it and Gus paid him the money.

On April 23, 1981, Hampton again returned to Gus's shop, again with recording equipment. He told Gus that he had a 19-inch television. After some discussion about the possibility of the apprehension of the person claimed to have stolen the items, Gus paid Hampton $150 for the television set.

Police returned to the barber shop later on April 23, with a search warrant. Gus was arrested on a charge of receiving stolen property. The search pursuant to the warrant uncovered the 19-inch television. Later Gus turned the radio-cassette and the 10-inch television over to the police.

A grand jury indicted Gus, charging three counts of receiving stolen property of a value of at least $150. He was tried on an information substituted for the indictment, charging three counts of attempting to receive stolen property of the value of at least $150. On Count I, involving the radio-cassette, the jury found Gus guilty of attempting to receive stolen property of a value less than $150 and recommended that the court impose a fine in lieu of imprisonment. On Counts II and III, involving television sets, the jury found him guilty of attempting to receive stolen property valued at over $150. The jury assessed a punishment of two years' imprisonment on Count II and three years on Count III.

After a motion for new trial had been overruled, the court entered judgment imposing a fine of $1,000 on Count I and, in accordance with the jury's verdict on Counts II and III, the sentence on Count II of two years to run concurrently with the three-year sentence on Count III.

Appellant contends that there was substantial evidence that Officer Hampton induced appellant into the act which he committed and that the state failed in its burden of showing the absence of entrapment by prima facie proof by substantial evidence that the criminal intent originated not in the mind of the officer, but in the mind of the appellant and that the latter was " * * * ready and willing to engage in such conduct." Section 562.066.2, RSMo. Appellant asserts that, in the absence of such proof, the evidence established entrapment as a matter of law.

The state contends that there was substantial evidence that appellant was predisposed and ready and willing to commit the offense; that Hampton merely provided appellant with the opportunity to realize his intent.

As appellant contends, the evidence did not show any basis for police selection of appellant as a "target" in their "Target Fence" operation.

The respondent relies upon Hampton's testimony and the recorded conversations with appellant, as well as the rebuttal evidence in which, according to the state, appellant spoke of previously dealing in stolen shoes. The state contends that such

evidence was prima facie substantial proof that appellant was "ready and willing" (§ 562.066, *supra*) to deal in property which he had reason to believe was stolen.

The evidence, viewed favorably to the state, showed that, in the crucial first transaction, the officer took the radio to appellant's barber shop in its original box, concealed in a plastic bag. The appellant opened the conversation about the radio with an inquiry as to its cost. Hampton told appellant that he needed money and was asking about $75 for it. Apparently appellant made no response to this offer and Hampton then asked "a bill" ($100) for it. Appellant displayed an interest by inquiring whether or not the instrument was a "SK 21." Told that it was, he asked the officer to take it out of the box and, at appellant's suggestion, the two went into the back room. Appellant examined the instrument and told the officer that he had one almost like it. After a brief discussion involving the differences between the radio and the one he had, appellant asked: "What is the cheapest you can go on this babe? Right now—cash money—give me a hussle, man, I really don't want it—to tell you the truth. * * * [W]hy should I get him something that he almost (sic) got? His handles are all metal—it's got almost the same damn stock. Jesus Christ."

Hampton: "What about sixty-five?"

Appellant: "You won't take a half a hundred real fast?"

Hampton: "I'll take that."

Appellant: "All right, let's go."

There followed a conversation in which Hampton remarked that he was supposed to get a line on small color TVs. Appellant replied: "All right, but I don't want nobody knowin' nothin'." He told Hampton he'd like to get "[t]hose television tapes you make the pictures with." Hampton said that he didn't know whether his source of supply could get one of those; that he worked at a warehouse and put them in a bin for him; that if he couldn't get what appellant wanted, he'd get a couple of color TVs. "I'll get one of those TVs and be back here to see you, about next week sometime."

Appellant: "Okay, you know that I don't want to do business with a guy that snitches, man."

Appellant then got the $50 from the shop cash register and gave it to Hampton.

■ This evidence was sufficient to permit the jury to conclude that appellant readily and willingly entered into the transaction and that the officer merely provided an opportunity for appellant to carry out a preexisting intent to deal in stolen goods. There was no undue solicitation by the officer in effecting the transaction. Appellant emphasizes the reduced price at which the radio was sold as evidence that the officer accepted that ridiculously low price in order to induce appellant to make the purchase. There was evidence of price dickering, willingly and affirmatively participated in by appellant. Certainly the evidence does not point solely to the conclusion which appellant draws from it. The jury was free to reject such conclusion.

There is no reason to treat the second and third transactions in such detail. Appellant invited Hampton's return, fully aware of the officer's representations as to the nature of the dealings. Appellant's explanation of the transactions was that he was overwhelmed by the fluency of the officer's representations. The taped conversation reveals only that appellant was concerned primarily about being apprehended for participating in the transactions. With that reservation, he participated willingly and the evidence was certainly sufficient to counter appellant's self-serving declaration that his will had been overcome.

The appellant was not entitled to a directed verdict of acquittal on the basis of his entrapment defense.

Appellant next contends that the trial court erred in failing, on Counts II and III, to instruct the jury on the lesser included offense of attempting to receive stolen property of the value of less than $150.

By § 570.080.3, RSMo, receiving stolen property of a value of less than $150 is a class A misdemeanor. Receiving stolen property of a value of $150 or more is a class C felony. Section 564.011.3(3) makes an attempt to commit a class C felony, a class D felony. Section 564.011.3(5) makes any attempt to commit a misdemeanor, a class C misdemeanor. Appellant was entitled to an instruction submitting the lesser included misdemeanor if there was "a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." Section 556.046.2, RSMo.

The state's evidence with respect to the 10-inch television (Count II) showed that police had purchased it at a wholesale price of $250 on October 29, 1980. Its retail value at that time was $369. On April 22, 1981, police purchased at wholesale four 19-inch television sets for $1,296.84. The set involved in Count III was one of the four. The state's evidence was that the set had a retail value of $465 on the date of the purchase.

Appellant calls attention to § 570.020(1), RSMo, which fixes the "value" of the property involved in this case as " * * * the market value of the property at the time and place of the crime * * *." Absent the statute, this was the standard of value in criminal cases in which the value of property was significant. *State v. Armstrong*, 361 S.W.2d 811, 817[4, 5] (Mo.1962).

Many cases have recognized that wholesale and retail prices are relevant in determining fair market value (*State v. Carter*, 544 S.W.2d 334, 339 (Mo.App.1976); *State v. Hunt*, 651 S.W.2d 587, 591[10] (Mo.App. 1983); *State v. Williams*, 643 S.W.2d 3,5[6] (Mo.App.1982)), "* * * provided the sale did not occur at a time too remote from the time as of which the property value is to be determined." *State v. Thornton*, 557 S.W.2d 1, 3[4] (Mo.App.1977).

■ Here, as to the 10-inch television (Count II), the purchase was on October 29, 1980 and its sale to appellant on April 17, 1981. Given the nature of the property in question, the interval was not such as

would destroy the probative value of the testimony regarding its retail and wholesale value. *State v. Williams*, 643 S.W.2d 3, 5[6] (Mo.App.1982); *State v. Lawhorn*, 574 S.W.2d 455, 458[5, 6] (Mo.App.1978). There being no other evidence of the value of the instrument, there was no occasion to instruct for the misdemeanor offense. *State v. Burrage*, 418 S.W.2d 101, 106–7[9] (Mo.1967); *State v. Thornton*, 557 S.W.2d 1[3] [5, 6] (Mo.App.1977).

■ With respect to the 19-inch television, the time lapse question is not present inasmuch as the television was purchased on April 22, 1981, and sold to appellant on April 23, 1981. Appellant questions the evidence about the wholesale value of this set because it was one of four purchased at the same time and the invoice relied upon by the state to evidence the purchase price did not list a price for each set separately. Appellant argues that in such situation, the price of the set could not be determined by merely dividing the gross price by four. Be that as it may, the officer who made the purchase testified that the set had a retail value of $465. In that case the wholesale price would surely be in the range of the $324.21 testified to by the officer. The evidence clearly established a value of more than $150 for the 19-inch set. There was no evidence which warranted a finding of a value of less than that amount, so that a lesser included offense instruction was not required.

■ The foregoing disposes of appellant's further point that he was entitled to a directed verdict as to Counts II and III because the state failed in its proof of the value of the property involved.

Appellant raises numerous objections to Instruction No. 6 which read:

"INSTRUCTION NO. 6

"1. A person is guilty of an attempt to commit an offense when, with the purpose of committing the offense, he does any act which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense.

"2. It is no defense to a prosecution of an attempt to commit an offense that the offense attempted was under the actual attendant circumstances factually or legally impossible of commission if such offense could have been committed had the attendant circumstances been as the actor believed them to be."

As for the first paragraph, appellant complains that it is a deviation from the Missouri Approved Criminal Instructions. MAI–CR2d 33.01 includes the following definition of "attempt":

"Attempt (to commit an offense)

"The doing of any act, with the purpose of committing an offense, which is a substantial step towards the commission of the offense."

The language of Instruction No. 6 was taken from § 564.011.1, defining "attempt" as follows:

"1. A person is guilty of attempt to commit an offense when, with the purpose of committing the offense, he does any act which is a substantial step towards the commission of the offense. A 'substantial step' is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense."

■ Instruction No. 6 did deviate from MAI–CR2d, but such deviation could not have produced the prejudicial effect attributed to it by appellant. Had MAI–CR2d 33.01 been followed, the jury would have been obliged to look to the further instruction which defined "substantial step" in the language employed in Instruction No. 6. The insertion of the explanatory words did not highlight or overemphasize certain aspects of the law or the state's case. The deviation was nonprejudicial.

■ Appellant also objects to the second paragraph of Instruction No. 6, dealing with impossibility. Appellant complains that MAI does not authorize an instruction on what is not a defense, the essential nature of paragraph 2. Appellant asserts that impossibility was not his defense at the trial. However, he does, on this appeal, assert that he was entitled to dismissal of the information because of impossibility. That issue was potentially in the case and the trial court did not err in instructing on it.

Appellant alleges that the verdict-directing instruction on each count was erroneously submitted because each failed to require a finding of intent to deprive the owner of his lawful interest in the property involved. Appellant contends that the instructions given violated MAI–CR2d 2.04, requiring that a verdict-directing instruction call for a finding on all of the essential elements of the crime charged.

Section 570.080.1, RSMo, specifies, as an element of the offense of receiving stolen property, that the receiver receive, retain or dispose of the stolen property " * * * the purpose of depriving the owner of a lawful interest therein."

■ The instructions in question followed MAI–CR2d 18.02. They contain no language expressly requiring a finding of intent. However, Instruction No. 7 defining the offense of receiving stolen property in the language of the statute was also given. This procedure was in accord with Note on Use 3 to MAI–CR2d 18.02: "If * * the attempt crime is submitted but the object crime is not submitted, a separate instruction must be given defining the object crime, whether the definition is requested or not."

■ In view of the absence of specific objection either at trial or in the motion for new trial to the instruction on the grounds now asserted (*State v. Van Doren*, 657 S.W.2d 708, 712[2] (Mo.App.1983)) and the admission by the appellant of the essential facts of the transactions, the trial court is not to be convicted of error in following the procedure specified in MAI–CR2d 18.02. *State v. Barnett*, 611 S.W.2d 339, 341–343[4–6] (Mo.App.1980).

The absence of factual dispute, except for the entrapment issue, distinguishes this case from *State v. Golliday*, 637 S.W.2d 106, 109[5–7] (Mo.App.1982), where the na-

ture of the force used in an attempted robbery was in issue and the instructions failed to distinguish properly the elements of robbery in the first degree (§ 569.020, RSMo) and robbery in the second degree (§ 569.030, RSMo). Nor is the situation here such as that presented in *State v. Pickins*, 660 S.W.2d 705 (Mo.App.1983), where the referred to definition of the crime of burglary in an attempted burglary case failed to specify the object crime of the burglary.

Appellant next complains that the trial court erred in assessing the punishment on Count I at a fine of $1,000 because the fine imposed exceeds the maximum provided by law for the offense. The state concedes that the conviction on Count I of attempting to receive stolen property of a value of less than $150 is a class C misdemeanor. §§ 570.080.3 and 564.011.3(5), RSMo. The maximum fine for a class C misdemeanor is $300. Section 560.016.1(3), RSMo.

Although Rule 30.23, V.A.M.R., does not expressly refer to judgements imposing fines in excess of statutory limits, the direction to an appellate court to " * * * dispose finally of the case" would encompass the modification of the judgment here to impose the maximum fine of $300, justice not requiring otherwise.

Appellant further objects to the verdict-directing instructions insofar as they relate to punishment to be imposed. As to Instruction No. 8, submitting attempting to receive property of a value less than $150 (Count I) appellant complains that the instruction permitted the jury to fix a punishment not to exceed six months' imprisonment, whereever the maximum imprisonment for a class C misdemeanor, which Instruction No. 8 submitted, is 15 days' imprisonment. Section 558.011.1(7), RSMo.

Inasmuch as the objections now urged were not raised at any time in the trial court, review here is under the plain error rule. Rule 28.03, V.A.M.R.; *State v. Babbitt*, 639 S.W.2d 196, 200 (Mo.App. 1982).

As for Instruction No. 8, the jury recommended a fine and did not assess a punishment of imprisonment. In such circumstances, the incorrect statement of the term of imprisonment which might have been imposed would not have been plain error, resulting in manifest injustice to appellant.

As to Instructions No. 10 and No. 12, the complaint is that, although the instructions did inform the jury that it might recommend that the court assess a fine in lieu of imprisonment or in addition thereto (*State v. Blake*, 620 S.W.2d 359 (Mo. banc 1981)), they failed to specify the maximum fine which might be imposed in such event. *State v. Van Horn*, 625 S.W.2d 874, 878[6] (Mo.1981), recommended that MAI–CR2d 2.60 be modified to state the maximum fine which the court might impose. Trial of this case began January 27, 1982, subsequent to the decision in *Van Horn*, which was handed down on December 14, 1981, with a motion for rehearing overruled January 12, 1982. MAI–CR2d 2.60 was subsequently withdrawn and MAI–CR2d 2.04 revised on December 15, 1982, effective June 1, 1983, to incorporate the *Van Horn* recommendation in the verdict-directing instruction.

In the absence of objection below on the grounds now urged, the question presented is whether or not the failure to heed the *Van Horn* recommendation constituted plain error.

Instruction No. 8 authorized the jury to impose a punishment of imprisonment not to exceed six months upon a finding of guilt on Count I, the misdemeanor of attempting to receive stolen property of a value less than $150. That offense being a class C misdemeanor §§ 570.080.3 and 564.011.3(5), RSMo), the maximum term of imprisonment is fifteen days. Section 558.011.1(7), RSMo.

In view of the jury's recommendation of a fine only on this count, the erroneous term of imprisonment could not have prejudiced the defendant.

■ As for the omission of the maximum fine which might be imposed on each of the three counts, the jury accepted the alternative of a fine on Count I. No prejudice could have flowed from the jury's lack of knowledge of the amount which the count might impose.

As to Counts II and III, appellant argues that, had the jury known that the court might have imposed a fine of up to $5,000 on those counts, " * * * it is highly possible that they would not have sentenced him to imprisonment on those counts."

The instruction covering those offenses gave the jury the choice of three alternative punishments upon a finding of guilt:

1. Imprisonment in the division of corrections for a term of two to five years.

2. Imprisonment in the St. Louis Medium Security Institution for a term not to exceed one year.

3. A recommendation that the court assess a fine in lieu of imprisonment or in addition thereto.

■ Thus, the jury was offered two alternate lesser penalties than that ultimately imposed. They were clearly and correctly instructed about the lesser punishment of imprisonment in the St. Louis Medium Security Institution for a term of not more than one year. That alternative was rejected. Argument that the jury might have accepted an even lesser penalty of a fine, had this become the maximum amount which might have been imposed, is wholly illogical and unacceptable. No prejudice resulted from the omission of the amount of fine which might have been imposed.

■ Appellant raises numerous objections, none of which were presented to the trial court to the cross-examination of appellant in which the prosecutor inquired of him whether or not, as Hampton walked into the barber shop to discuss the 10-inch television, appellant, in conversation with a third person, had said:

"—A guy across the street from me used to get them from his brother what's been stealing from Brown Shoes. He got me a case. I sold them at one place. The son-of-a-bitch can't get me no more. You know what I made on them? Ten bucks a pair. But he got them for me for $10.00." Appellant denied having made the remark and he was confronted with the tape recording which included that statement. Appellant denied that the voice on the tape was his. On rebuttal, Hampton testified that he heard the remark, that appellant made it and that the voice on the tape was that of appellant. The officer's testimony refutes any claim of lack of foundation or proof for introduction of the statement.

■ The objection that the statement related to another offense is without merit. Appellant in his testimony denied having ever dealt in stolen goods. His statement, inconsistent with such testimony, was proper impeachment. *State v. Whitt*, 592 S.W.2d 316, 317[1] (Mo.App.1979); *State v. Payton*, 559 S.W.2d 551, 554[5] (Mo.App. 1977).

Appellant complains of the admission into evidence of the taped conversations between Hampton and appellant. He asserts that the recordings were unclear and contained sufficient inaudible portions as to render them untrustworthy.

The defendant filed a motion to suppress the tape recordings. At a pre-trial conference, the court listened to at least the recording of the first meeting between Hampton and the defendant. The court stated that it could not conclude that the portions of the tape which were inaudible would contain anything necessarily favorable to the defendant and that the officer would be available for cross-examination regarding it. Therefore, the court ruled that the tape could be introduced into evidence. The record is not entirely clear, but the court appears to have listened to the tapes of the second and third visits and likewise permitted their introduction into evidence over the defendant's objection.

On this appeal, the contention is that the circumstances of this case cause the partial inaudibility to make the tapes as a whole untrustworthy. Appellant contends that

the inaudible portions let the jury speculate as to the content, potentially attaching greater significance to the audible portions which were prejudicial to the defendant.

Appellant recognizes that partial inaudibility of a tape recording does not necessarily bar the admission of the tape in evidence. *State v. Brown*, 607 S.W.2d 881, 885[4] (Mo.App.1980); *State v. Hunt*, 651 S.W.2d 587, 591[9] (Mo.App.1983). Whether or not the inaudible portions render a recording untrustworthy is a question directed primarily to the discretion of the trial judge. *Monroe v. United States*, 234 F.2d 49, 54–55[4–6] (D.C.Cir.1956) *cert. den.* 352 U.S. 873, 77 S.Ct. 94, 1 L.Ed.2d 76 (1956). Here, there was nothing to indicate that the omitted portions contained anything favorable to the defendant. There was no claim of deliberate editing of the tapes by the prosecution. In such circumstances, the trial court's ruling cannot be said to have been an abuse of discretion. See *State v. Brown, supra, State v. Miller*, 588 S.W.2d 237, 241–242[8] (Mo.App.1979).

Appellant objects to the introduction into evidence of the transcript of the tape recordings. His first evidence objection, based on the best evidence rule, is without merit, since the tapes from which the transcripts were taken, were in evidence. *State v. Engleman*, 634 S.W.2d 466, 478[16] (Mo.1982); *State v. Brown*, 607 S.W.2d 881, 885[5] (Mo.App.1980). His second objection is that the transcripts "unnecessarily highlighted the evidence contained therein." This assertion is not self-proving and no attempt is made to demonstrate that the transcripts had the effect which appellant would accord them. Appellant stated at the trial that the transcripts had been carefully reviewed several times to determine that they " * * * were as accurate as humanly possible." Although defense counsel did not agree to the use of the transcripts (*State v. Montgomery*, 590 S.W.2d 105 (Mo.App.1979)), the counsel acknowledged that the transcripts faithfully reported the content of the tapes. The trial court's permitting the use of the transcripts was a proper exer-

cise of discretion. See *State v. Engleman, supra; State v. Brown, supra.*

Appellant contends that his motion for a judgment of acquittal at the close of all of the evidence should have been sustained because the information failed to plead and the evidence failed to show that appellant had committed a crime. He contends that the offense alleged and shown was impossible of commission because the property alleged to have been received by him was not stolen.

This contention is answered adversely to appellant by *State v. Hunt*, 651 S.W.2d 587, 589–590[1, 2] [3–5] (Mo.App.1983).

Appellant's argument on this point also hints at a claim of unconstitutionality for vagueness if §§ 570.080 and 564.011 are to be applied in a case such as this. Section 564.011 clearly excludes the defense of impossibility. Application of that statute in this case presents no problem of unconstitutional vagueness.

Appellant's final contention is based upon the trial court's overruling his challenges for cause to two veniremen. The first was to Venireman Raymond Kirchoff. The basis for the challenge was that Kirchoff had been an Internal Revenue Service Agent for 22 years and dealt with both civil and criminal enforcement of the federal income tax law. Appellant relies on that fact alone as Kirchoff's answers to all questions on voir dire were supportive of his impartiality.

Kirchoff's "[a]ffiliation or connection with law enforcement is, standing alone, not reason enough to sustain a challenge for cause." *State v. Wraggs*, 512 S.W. 257, 258[2–3] (Mo.App.1974). See *State v. Williams*, 650 S.W.2d 642, 643[6] (Mo.App.1983); *State v. Wood*, 575 S.W.2d 943 (Mo.App.1979); *State v. Quillun*, 570 S.W.2d 767, 770[6] (Mo.App.1978).

Appellant cites *State v. Butts*, 349 Mo. 213, 159 S.W.2d 790, 793–794[3–6] (Mo. 1942), in support of his argument. Butts strongly disapproved of putting a policeman on the jury. However, in that case,

the venireman was a member of the police force and fellow-officer and his chief were witnesses. Kirchoff had no such connection with the police officer who testified in this case. See *State v. Russ*, 574 S.W.2d 5, 6–7[2–3] (Mo.App.1978); *State v. Wood, supra*.

In the case of the second venire person, Ernest Sandlin, an employee of an alarm system, he replied in responding to a question as to whether he knew people in the law enforcement field:

"VENIREMAN SANDLIN: Well, with my work I run into quite a few officers with the burglaries and what have you, hold-ups. Also, there's a gym I live above, and I—I don't know their names, but I might have seen different officers. Some of them I know by their first names.

"MR. BROWN: Working out in the gym type of thing?

"VENIREMAN SANDLIN: Yes.

"MR. BROWN: Is there anything about those aquaintanceships that you feel would affect your ability to be a juror in this case?

"VENIREMAN SANDLIN: Well, with the burglaries and the hold-ups, maybe as far as that but that's about all. They do talk about some of the cases."

In subsequent questioning Sandlin unequivocally replied that he would not be influenced in this case by his prior experiences with police officers.

Appellant contends that the venire person's original reply indicated that he was biased in favor of police officers because of his work with them and showed that he would not impartially weigh police testimony but would believe such testimony as against other contrary testimony.

▮ Sandlin's original response indicated only, at best, a possible bias in favor of police officers in matters related to his occupation. His subsequent questioning revealed no general bias in favor of police and, in fact, revealed some skepticism regarding their credibility. On his whole examination, the trial court's ruling was not

error, *State v. Garrett*, 627 S.W.2d 635, 642[13–14] (Mo. banc 1982): *State v. Williams, supra; State v. Wraggs, supra; State v. Owens*, 620 S.W.2d 448, 449–450[1–3], [4–5], [6] (Mo.App.1981).

Appellant relies upon *State v. Thrift*, 588 S.W.2d 525 (Mo.App.1979). There one venireman consistently stated a bias in favor of the prosecuting witness whom he knew. A second responded similarly regarding the veracity of a police officer-witness, whom he knew. The responses of Sandlin were not of that nature. See *State v. Owens, supra*.

Judgment on Count I modified to impose fine of $300, and as modified, judgment on Count I is affirmed. Judgment on Count II and Count III affirmed.

SNYDER, P.J., and STEWART, J., concur.