# IN THE COURT OF APPEALS 09/17/96

# OF THE

# STATE OF MISSISSIPPI

## NO. 93-KA-00676 COA

**HERBERT L. BREWER III**

**APPELLANT**

**v.**

**STATE OF MISSISSIPPI**

**APPELLEE**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. BARRY W. FORD

COURT FROM WHICH APPEALED: LEE COUNTY CIRCUIT COURT

ATTORNEYS FOR APPELLANT:

JOSEPH C. LANGSTON

WILBUR COLOM

ATTORNEY FOR APPELLEE:

OFFICE OF THE ATTORNEY GENERAL

BY: DIEDRE MCCRORY

DISTRICT ATTORNEY: JOHN R. YOUNG

NATURE OF THE CASE: CRIMINAL-POSSESSION OF EXPLOSIVES

TRIAL COURT DISPOSITION: SENTENCED TO SERVE FOUR YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS

EN BANC.

McMILLIN, J., FOR THE COURT:

The Court has before it for consideration the appeal of Herbert Brewer III of his conviction by a jury in the Lee County Circuit Court of the crime of unlawful possession of explosives. *See* Miss. Code Ann. § 97-37-23 (1972). Brewer raises nine issues for review on appeal. We have thoroughly considered the record and the applicable law and have concluded that there is no basis to reverse the conviction, and we, therefore, affirm.

I.

The Facts

Brewer is a licensed chiropractor who had an office in Lee County during the time relevant to this case. He also was involved in a pawn shop across the street from his chiropractor's office. The proof indicates that the privilege license for the business was issued in the name of Brewer's then wife; however, he testified that the business was a corporation, and he was the sole owner of all of the stock in the corporation. The record further shows that Brewer was actively engaged in the pawn business's operation and made frequent appearances in the store during the course of a normal business day. His wife, on the other hand, was not active in the business during the period relevant to this case.

Brewer's activities in connection with his pawn shop had come under scrutiny by law enforcement authorities due to information that indicated he might be in possession of a stolen computer. As a part of their investigation of the matter, investigating officers decided to use a ploy involving a pistol that had been previously stolen and recovered by another police organization. An undercover officer, accompanied by a cooperating individual known to Brewer, went to Brewer's pawn shop, and, with the cooperating individual vouching for the undercover officer, the officer attempted to negotiate a sale of the pistol to Brewer. The officer told Brewer on two separate occasions during the negotiations that the gun had been stolen. Ultimately, Brewer purchased the gun from the undercover policeman.

The law enforcement personnel then made an affidavit to a magistrate to obtain a search warrant to recover the pistol from Brewer's pawn shop. The affidavit in support of the warrant essentially related, only in some greater detail, the circumstances as set out in the immediately preceding paragraph. The warrant was issued, and the officials returned to the store to serve the warrant. In the course of conducting the search under the warrant, the officers noticed and seized a quantity of dynamite blasting caps and related explosives material.

Brewer was indicted in a two-count indictment for receiving stolen property (the pistol) and for unlawful possession of explosives under section 97-37-23 of the Mississippi Code of 1972. The trial court subsequently dismissed the receiving stolen property count on the basis that the pistol, at the

time it was negotiated to Brewer, was no longer "stolen" and thus, the crime as charged was factually impossible of commission. No appeal was taken from this ruling by the State.

Brewer was tried and convicted on the count of the indictment dealing with possession of explosive materials, and it is from this conviction that this appeal was perfected. We will discuss the nine issues raised seriatim.

II.

The Court's Failure to Grant a Directed Verdict

Under this general heading, the defendant raises a number of separate sub-issues dealing essentially with the sufficiency of the proof to establish all of the elements of the charged crime.

The statute under which Brewer was convicted reads, in part, as follows:

> It is unlawful for any person to have in his possession dynamite caps, nitroglycerine caps, fuses, detonators, dynamite, nitroglycerine, explosives, gas or stink bombs, or other similar explosives peculiarly possessed and adapted to aid in the commission of a crime; except such person or persons who are engaged in a lawful business which ordinarily requires the use thereof in the ordinary and usual conduct of such business, and who possess said articles for the purpose of use in said business; and upon conviction of any person thereof, he shall be punished by imprisonment in the Penitentiary for a term not to exceed five (5) years. The possession of such explosives by one who does not customarily use same in his regular and ordinary occupational activities shall be prima facie evidence of an intention to use same for such unlawful purposes.

Miss. Code Ann. § 97-37-23(1) (1972).

Brewer contends that the State's proof was lacking in that the materials found in the pawn shop were "peculiarly possessed and adapted to aid in the commission of a crime," and that this failure must be seen as fatal to the State's case. A fair reading of the statute indicates that the quoted qualifying language applies only to the term "other similar explosives," on the supposition that it is a foregone conclusion that the specifically named devices are, by their very nature, so adapted. Otherwise, we would be faced with the proposition that there existed, for example, stink bombs that were adapted to aid in the commission of a crime and other stink bombs that were not so well adapted. While this interpretation might be expected to produce some interesting points to litigate, it hardly seems a sensible reading of the statute. Thus, if it is accepted as fact, as simple logic readily suggests, that the listed items are inherently adapted to criminal activity, then proof that some explosive device or material not specifically listed is of the same essential type as the listed items would appear sufficient, with nothing more, to bring that material within the prohibition of the statute. The proof showed unequivocally that the materials seized including electric blasting caps and explosive detonating cord,

which could readily be classed as "detonators" within the meaning of the statute. Also, the materials bearing the brand name "Kinepak" were shown to be a liquid (nitromethane) and a powder (ammonium nitrate), which, when combined as specifically intended by the instructions furnished by the Kinepak manufacturer, would produce, according to the State's expert, "a very high explosive, very shock sensitive explosive." This proof alone seems sufficient to bring the "Kinepak" materials well within the class of substances prohibited by the statute, and it is ludicrous to suggest, as Brewer does in his brief, that simply because the separately inert Kinepak packets had not been pre-mixed for imminent us e at the time of their seizure, these materials were not prohibited explosives and "were no more dangerous than common fertilizer."

Brewer also claims that the proof was insufficient to establish that he was the party in possession of the materials. The proof included receipts showing his purchase of similar items, the fact that he was the owner of the pawn shop where the items were found, was primarily in control of the day-to-day operation of the pawn shop business, and frequented in the business on an every day basis. Cathy Lindsay, who was married to Brewer at the time, testified to having formerly seen materials resembling the seized items in the Brewer home. We conclude that these facts were sufficient to permit the jury to conclude that Brewer was in possession of the materials.

Brewer claimed to have been engaged, from time to time, in such activities as blowing up beaver dams, redirecting the path of waterways by the use of explosives, and blowing away ice which covered stock ponds. He argues that, through these activities, he constituted himself a person "engaged in a lawful business which ordinarily requires the use [of such materials] in the ordinary and usual conduct of such business," thus taking him out of the operation of the statute. *See* Miss. Code Ann. § 97-37-23(1) (1972). The evidence of such activities was sparse, at best, and there was no proof that Brewer himself owned any farmland or was directly engaged in agricultural pursuits as a sideline business. We conclude that this issue was for the jury to determine. It appears to have been fairly presented to the jury as a basis to acquit Brewer. Instruction D-2-A instructed the jury as follows:

> The possession of illegal explosives by one who does not customarily use the same in his regular and ordinary occupational activities is prima facie evidence of an unlawful purpose. This, however, merely places on Dr. Brewer the responsibility to articulate a legitimate reason for his possession of the explosives.

> If you believe the reasons articulated by Dr. Brewer and that Dr. Brewer complied with the requirements necessary for the legitimate possession of explosive articles then your verdict shall be for the defendant.

The jury's subsequent guilty verdict indicates quite clearly that it found against Dr. Brewer on this defense, and we cannot conclude that such a determination was so erroneous as to require this Court to disturb the jury's verdict.

III.

The Failure to Include the "Circumstantial Evidence Standard"

Language in the Jury's Instructions

The defendant asserts that this was purely a circumstantial evidence case. He entered a blanket objection to all instructions offered by the State that mentioned the burden of proof for their failure to include the extra verbiage dictated by *Keys v. State* that the proof must not only establish guilt beyond a reasonable doubt, it must also be "to the exclusion of every reasonable hypothesis consistent with innocence." *Keys v. State*, 478 So. 2d 266, 267 (Miss. 1985). This argument is without merit. Our case law has clearly established that, if there is any direct evidence bearing on the defendant's guilt, this additional language is not necessary. *McCraw v. State*, 260 So. 2d 457, 460 (Miss 1972). In this case, there was direct evidence of the seizure of the explosives from a commercial establishment owned and operated by the defendant. There was direct proof that he was in the business on numerous occasions during a normal day. There was evidence that, prior to the time the materials were found in the business, the defendant's wife had observed similar materials in the defendant's home, and there was documentary evidence of the defendant having purchased such materials. This issue is without merit.

IV.

The Court's Failure to Instruct on Intent

Brewer complains that the trial court failed to instruct the jury properly on the element of criminal intent for not "specifically requiring the jury to find that the defendant intended to use the explosives for unlawful purposes."

The statute, dealing as it does with mere possession of certain materials, appears to have been substantially patterned after section 97-17-35 of the Mississippi Code of 1972 dealing with the possession of burglar's tools. Both statutes share a similar consideration, in that they involve materials, the possession of which may or may not be criminal, depending upon the circumstances of the possessor. Thus, a hotel security guard may legally possess a firearm, a flashlight, and a master key to every room in the hotel, while another person discovered on the hotel grounds with such materials concealed on his person may not enjoy the same privilege, and might reasonably expect to find himself charged criminally under the statute.

The burglary tools statute and explosives statute share another attribute, in that the drafters left something to be desired in regard to defining the essential elements of the crime. Specifically, neither statute affirmatively declares that a wrongful intent must accompany the possession, yet both of them, in their concluding sentence, describe circumstances which may be said to create a prima facie case of an unlawful "intention." The Mississippi Supreme Court, in interpreting the burglary tools statute, found that the necessary element of intent was clearly included by implication, when it said:

> The possession of a particular article, or combination of articles, may or may not be unlawful under the statute, depending on whether the evidence reveals circumstances from which it may be inferred beyond a reasonable doubt that the possessor intended that he or

some other person use the article or articles in aid of burglary or other similar crime. The Mississippi statute does not refer to a specific felonious intent, but a felonious intent must be proven. The State is not required to prove a specific intent to commit a particular crime; but it is sufficient if the circumstances justify the inference that the article or articles were possessed for such criminal purpose. Thus, a general intent is sufficient.

*Fuqua v. State*, 246 Miss. 191, 199-200, 145 So. 2d 152, 154 (1962).

We conclude that, given the similarity of the statutes, the supreme court would apply essentially the same considerations in determining the proof necessary to establish criminal intent in an explosives possession case. As in the burglary tools statute, the explosives statute defines a set of circumstances in which the jury may infer the impliedly-necessary criminal intent.

In the burglary tools statute, the law will permit an inference of wrongful intent if the materials are either (a) concealed on the person of the defendant or (b) concealed in the person's baggage. Miss. Code Ann. § 97-17-35 (1972). This would not seem to preclude a prosecution for possession if the materials were discovered in the defendant's home. It simply means that, in that circumstance, the requisite criminal intent must be supplied from some source other than the presumption arising out of the circumstances under which the materials were discovered.

In the explosives statute, the law permits the State to make a prima facie on the issue of intent by showing mere possession by any person except such persons as are engaged in a business in which such materials are customarily used. Again, this portion of the statute does nothing more than provide one means by which the State may establish the requisite criminal intent. Thus, it is clear that proving one is engaged in a business that customarily uses such materials would not be an absolute defense to the charge if the State could prove through other affirmative evidence the intention of the possessor to use the materials in the commission of a crime. The statute, in fact, covers that eventuality, when it adds the element that one engaged in the business must "possess said articles for the purpose of use in said business." *See* Miss. Code Ann. § 97-37-23(1) (1972).

In this case, however, the State clearly relied solely upon the premise that Brewer was not a person in the business of using explosives, thereby establishing a prima facie case of criminal intent, since there was no proof offered as to Brewer's actual intentions for the use of such explosives. As a part of its case in chief, it presented evidence of Brewer's principal economic or professional pursuits; namely his chiropractic clinic and pawn shop. It is fair to assume that the jury was warranted in concluding that neither of these activities customarily involved the use of explosives. If taken to the logical extreme, it might appear that the statute has placed upon the State the essentially-impossible burden of proving a negative; that is, that the State must establish every possible lawful business that might ordinarily require explosives and then present affirmative evidence that the defendant is not engaged in such an enterprise. This appears to be the thrust of Brewer's argument on this point when he says that the jury instructions "incorrectly allocated the burden of proof." We think this carries the State's burden too far. We conclude that the State's proof was sufficient, absent rebuttal, to permit the State to rely upon the statutorily-created prima facie case of intent. It was certainly, at that point, within

the power of the defendant to come forward with evidence of another of the defendant's business enterprises that did customarily use explosives, but that cannot be said to be improperly shifting the burden of proof to the defendant to prove his innocence. In *Dobbs v. State*, the supreme court dealt with an instruction that suggested the necessity for a defendant in a murder trial to produce some evidence to support his self-defense instruction if it were to form the basis for an acquittal. The defendant claimed this improperly shifted the burden of proof to the defendant, but the court said:

> The objection that the quoted instruction shifts the burden of proof to the defendant is not well-taken. The State's burden is to make out affirmatively its prima facie case beyond all reasonable doubt. Of course, it must maintain this degree of proof against defenses asserted by the defendant, but it is the defendant's concern and duty to go forward in the establishment of his defenses. The instruction goes no further than recognition of such duty.

*Dobbs v. State,* 200 Miss. 595, 605-06, 29 So. 2d 84, 85 (1947), *overruled in part on other grounds by Flowers v. State,* 473 So. 2d 164, 165-66 (Miss. 1985).

In this case, instruction S-2 did not suggest the necessity of the defendant affirmatively proving his involvement in an explosives-related business as a prerequisite to a not guilty verdict. Taken in the context of the proof offered by the State, it did, and properly so, suggest to the jury that, as a part of its deliberations, it was charged with determining the issue of whether he was so engaged. Thus, the instruction correctly charged the jury with determining whether the defendant, in the face of evidence that none of his economic activities known to the State involved the use of explosives, had come forward with evidence satisfactory to the jury that his alleged agriculture-related explosive activities constituted a lawful business endeavor which would justify his possession of the materials. The jury decided this issue against him, and there was no error in the instruction.

V.

An Attack on the Constitutionality of the Statute

Brewer attacks the statute as being unconstitutionally vague in that it does not permit "a person of ordinary intelligence . . . reasonable opportunity to know what is prohibited." *Cumbest v. State,* 456 So. 2d 209, 220 (Miss. 1984). Specifically, Brewer takes issue with the language creating what he refers to as the "lawful business" exception. He claims that the fact finder is given too much latitude in determining what it means to be "engaged in a lawful business" within the meaning of the statute. Miss. Code Ann. § 97-37-(1) (1972).

The State argues that Brewer has failed to preserve a constitutional attack on the validity of the statute for appellate review. We conclude this argument has merit. At trial, the only argument advanced was a statement by defense counsel that, "I think the statute itself may be vague, unconstitutionally vague and I will add that to my argument because it leads one in a situation where one cannot determine what conduct is being charged for what offense." This rather nebulous

statement could have been directed at some other part of the statute rather than the language relating to the "lawful business" exception.

Nevertheless, this Court has considered the issue on the merits and concluded that the statute is sufficiently explicit to "inform those subject to it what acts it is their duty to avoid, or what conduct on their part will render them liable to [the particular law's] penalties." *Cassibry v. State*, 404 So. 2d 1360, 1367 (Miss. 1981). While it may be true that there may be a legitimate dispute, on a given set of facts, as to whether a person is "engaged" in a particular business, we conclude that the words, given their "common understanding," are sufficiently definite to frame an issue of fact on the question for resolution by the jury. *Id.* at 1368. A review of the evidence and the instructions in this case indicates to this Court that the jury simply failed to conclude that Brewer's evidence concerning his activities with explosives constituted a legitimate business activity within the commonly accepted meaning of the terms used in the statute. This does not constitute reversible error.

VI.

The Denial of a JNOV Motion

Brewer assigns as error the failure of the trial court to grant a JNOV, which is an attack on the sufficiency of the evidence presented to sustain his conviction. *Johnson v. State*, 642 So. 2d 924, 927 (Miss. 1994) (citing *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993)). His argument before this Court, however, appears to be that his conviction was against the overwhelming weight of the evidence. Such a proposition, if found to have merit, entitles the defendant to a new trial and not a JNOV. *Eakes v. State*, 665 So. 2d 852, 872 (Miss. 1995). Because his post-conviction motion for relief at the trial level was in the alternative, *i.e.*, he sought either a JNOV or a new trial, we will consider both aspects of the question.

The argument itself focuses first on the lack of proof of criminal intent. As we have previously observed, the statute itself supplies one means for the State to establish a prima facie case of intent. The State took advantage of this to supply proof of criminal intent, and we have already concluded that the evidence was sufficient on this point. On the related issue of whether, based on all the evidence, a finding of guilty intent based solely on the statutory presumption was against the weight of the evidence, we conclude that the question of whether the defendant had successfully overcome the State's prima facie case was properly submitted to the jury and resolved against Brewer. We do not find this conclusion to be so contrary to the weight of the evidence as to warrant our interference with the guilty verdict. *Burrell v. State*, 613 So. 2d 1186, 1191 (Miss. 1993).

Secondly, Brewer argues that the proof of his possession of the materials was so lacking that the verdict "was contrary to the overwhelming weight of evidence . . . ." Again, it is difficult to determine whether this is an attack on the weight or the sufficiency of the evidence of possession. However, in either case, the argument must fail. The State presented proof that the materials were found on the premises of a business solely owned by the defendant and which he visited on a recurring basis during a normal business day. There was further evidence that these, or at least similar, materials had previously been observed by the defendant's wife at the parties' home. Receipts indicating purchase of such materials by the defendant was also presented. This was sufficient evidence to submit the

question of possession to the jury, and thus establishes the correctness of the trial court's denial of a JNOV motion. *Walton v. State*, 642 So. 2d 930, 931-32 (Miss. 1994). The defendant did little to rebut this evidence other than to show that he had employees who were also in the store on a regular basis, and that his wife was listed on the privilege license for the pawn shop. We cannot say, on this limited proof, that a jury determination of Brewer's possession was against the weight of the credible evidence, viewed, as it must be, in the light most favorable to the State. *Gossett v. State*, 660 So. 2d 1285, 1294 (Miss. 1995).

VII.

Selective Enforcement Defense

This Court has some difficulty in understanding this issue raised by Brewer. It appears to be based upon the trial court's failure to grant an instruction regarding the duty of the jury to acquit on the misdemeanor charge of failure to register the explosives if the jury concluded that the State was engaged in an impermissible selective prosecution.

The statute under which Brewer was charged provides an alternative crime in the instance where the possession is found to be pursuant to a lawful business undertaking. The crime is a misdemeanor for failure to register the explosives with appropriate authorities under a procedure set forth in the statute. Miss. Code Ann. § 97-37-23(3) - (4) (1972). The jury was instructed that, if it concluded that Brewer was not guilty of felony possession, it must still consider what the instruction termed "the lesser included crime" of failing to properly register the materials. A separate form of the verdict was prescribed in the event the jury convicted of this lesser crime.

Brewer apparently presented evidence that tended to indicate that no other resident of Lee County had ever been prosecuted under the misdemeanor portion of the statute.

There are a number of problems with the proposition advanced by Brewer to upset his conviction on the basis of selective prosecution, but the primary one is that Brewer was not convicted by the jury of this misdemeanor charge. He was convicted of the greater felony charge, for which he could be found guilty without regard to whether the explosives were registered. No evidence was presented by Brewer regarding any of the elements that might establish a case of selective prosecution on the felony aspects of the statute. There is simply no merit to this alleged error.

Parenthetically, we leave for another day the question of whether the misdemeanor for failing to register explosives possessed for a lawful purpose is, in fact, a lesser included offense of the crime of

unlawful possession of explosives since that question, though seemingly pertinent, was apparently not addressed at the trial level and was not raised in this appeal.

VIII.

Errors in the Trial Court's Rulings on the Admission of Evidence

This assignment of error deals with the exclusion of the defendant's testimony concerning an alleged conversation with a former Lee County Sheriff, who had since died, regarding what was required to comply with the law concerning possession of explosive materials. The State has observed that this evidence was excluded on the basis of a discovery violation by the defendant, and, thus, the trial court never reached the issue of the admissibility of the evidence based on its probative value. Unfortunately, as the State should be well aware, the applicable rules of procedure do not permit so summary an exclusion of evidence for discovery violations. The procedures first mentioned in Justice Robertson's special concurrence in *Box v. State*, which were formalized into the Uniform Criminal Rules of Circuit Court Practice in effect at the time this case was tried, provide a mandatory procedure for handling discovery violations by both the State and the defendant. *Box v. State*, 437 So. 2d 19, 23-24 (Miss. 1983) (Robertson, J., specially concurring); *see* Unif. Crim. R. Cir. Ct. Prac. 4.06(i) (carried forward to URCCC 9.04(I)). These rules were not followed, therefore, the stated reason for excluding the evidence is without merit.

It does not necessarily follow, however, that the evidence was admissible. Moving even a step further, should we determine that the evidence was improperly excluded, the law is clear that erroneous rulings on the admission or exclusion of evidence are subject to harmless error analysis. *Holmes v. State*, 537 So. 2d 882, 884 (Miss. 1988); *see also* M.R.E. 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . .").

Brewer's intention was apparently to testify that former Sheriff Jack Shirley had orally advised him that filling out the federal forms required at the time of purchase of explosives was adequate compliance with the law regarding possession of the materials insofar as the sheriff was concerned "if I wasn't planning on blowing up somebody . . . ." His position argued on appeal is that this would tend to rebut any evidence of criminal intent on his part.

We conclude that the evidence was inadmissible as being irrelevant on the issue of criminal intent. Even assuming the jury believed Brewer that such a conversation took place, it is clear that the information purportedly conveyed by the former sheriff was patently incorrect. "It is well settled that ignorance of the law or mistake as to the law's requirements is not a defense to criminal conduct." *United States v. Duggan*, 743 F.2d 59, 83 (2nd Cir. 1984). The United States Supreme Court carved out a limited exception to this rule that, on first consideration, would appear to have some application here in the case of *Cox v. Louisiana*, 379 U.S. 559 (1965). In that case, Cox's conviction for leading an unauthorized civil rights demonstration was reversed because of his reliance on statements made by law enforcement officials that, if certain procedures were followed, the demonstration would not violate a statutory prohibition against such activities "near" a courthouse for the purpose of improperly influencing or interfering with the administration of justice. *Id.* at 568. However, on

closer reading, it is clear that the Supreme Court, in finding such reliance justifiable, focused upon the right to rely upon the enforcement official's interpretation of what was impermissibly "near" the courthouse, rather than simply blind reliance on a baseless statement that the proposed demonstration would not violate the law. *Id.* at 568. The Court made clear that its decision did not:

> [C]onstitute a waiver of law which is beyond the power of the police. Obviously telling demonstrators how far from the courthouse steps is 'near' the courthouse for purposes of a permissible peaceful demonstration is a far cry from allowing one to commit, for example, murder, or robbery.

*Id.* at 569. Certainly, the Lee County Sheriff has no authority to grant waivers from the application of any of the provisions of section 93-37-23, nor may a person rely upon remarks to that effect allegedly made in casual conversations as constituting a justifiable reliance on an official interpretation of the law within the meaning of *Cox*. Though the evidence was excluded on the wrong theory, there is, nevertheless, no error.

The second error alleged regarding the exclusion of evidence involves Brewer's act of subpoenaing approximately forty individuals who were prepared to testify that they had bought and used explosives for agricultural purposes and never registered them. The record is clear that an agreement was reached among the trial court and counsel for both sides regarding an alternative method of introducing this evidence that was designed to avoid the unduly burdensome necessity of calling each of these witnesses. There is, therefore, no error preserved for this Court to review. In any event, this evidence once again appears to be primarily involved with the failure to register the explosives, a misdemeanor for which Brewer was not convicted.

IX.

The Validity of the Search Warrant

Brewer claims that the search warrant that led to discovery of the explosives was invalid, and that any evidence seized as a result is "fruit of a poisonous tree," and, thus, not admissible. He, therefore, alleges reversible error in the trial court's admission of the explosive materials into evidence, relying upon *Franks v. Delaware*, 438 U.S. 154 (1978). He argues that the search warrant was obtained to pursue recovery of a "stolen" gun that was, in fact, not a stolen gun. He claims that the policemen knew or well should have known that contraband, once recovered by the police, loses its characteristic of being stolen, so that any representation to that effect to the magistrate was a knowing and intentional false statement or a statement made with reckless disregard for the truth within the meaning of the *Franks* case. *Id.* at 155. In support of his argument, he points out that the count in the indictment for receiving stolen property was quashed by the trial court for the specific reason that the crime as charged was factually impossible of commission due to the character of the gun at the time it was bought by Brewer.

This argument misses the point. The fact that a subsequent indictment is later dismissed does not

automatically invalidate any search warrants issued during the investigation of potential criminal activity. An affidavit for a search warrant does not necessarily recite a particular suspected crime. It must simply provide sufficient information that "a magistrate [may] make a practical, common-sense decision as to whether, given all the circumstances set forth in the affidavit, there is a fair probability that evidence of a crime will be found in a particular place." *United States v. McCarty,* 36 F.3d 1349, 1356 (5th Cir. 1994).

There is no evidence whatsoever in the record that the officers in this case misrepresented any of the facts of their investigation to the magistrate when attempting to obtain a warrant. Insofar as the record shows, the affidavit fully revealed the circumstances of the gun as being recovered stolen property and the role of the undercover policeman in selling the gun to Brewer. While it may be true that the facts as presented to the magistrate did not demonstrate with the requisite certainty that evidence of the crime of receiving stolen property might be found in a search of the pawn shop, it is equally true that there was a substantial likelihood that another crime had, in fact, been committed by Brewer and that the gun was evidence of the commission of that crime. The specific crime that may have been committed was the attempt to receive stolen property. Though the issue has not been resolved in any reported Mississippi case, there is wide authority for the proposition that, in similar circumstances, where the sole impediment to the prosecution for receiving stolen property is the fact that the property is not, in fact, stolen, but this fact is unknown to the defendant and he is under the impression that he is improperly receiving stolen goods, then a prosecution will lie for the attempt. *State v. Torregrossa*, 680 S.W.2d 220, 230 (Mo. Ct. App. 1984) (A "sting" operation where electronic equipment was sold to suspected "fencing operation" on the pretext of being stolen property, and conviction for attempt was sustained on appeal); *People v. Rojas*, 358 P.2d 921, 922 (Cal. 1961) (Stolen property recovered by police was returned to a thief for delivery to the defendant. On appeal, verdict of guilty of receiving stolen property was modified to guilty of attempt and affirmed as modified.); *State v. Kordas*, 528 N.W.2d 483, 484-85 (Wis. Ct. App. 1995) (Police disguised department-owned motorcycle which was sold by undercover officer to defendant on representation of being stolen. The court held that defendant could commit offense of attempt to receive stolen property even though property was not stolen.). It is the prosecution and not the police that determine what indictment will be sought once evidence of a crime is obtained. Had the prosecution indicted Brewer, on these same facts, for attempt to receive stolen property, it appears reasonably certain that there would have been sufficient evidence to at least get to a jury on the charge. In such event, the validity of the search warrant would not be subject to question. The fact that the prosecution chose to indict Brewer for the wrong crime cannot be seen to retroactively cast the police officers' investigatory activities in a more sinister light.

An equally valid alternative reason to sustain the search warrant lies in the proposition that there is simply no evidence of the type of police misconduct that the *Franks* case was designed to retard. In *United States v. Leon,* the United States Supreme Court recognized a good-faith exception to the exclusionary rule of *Franks*. *United States v. Leon*, 468 U.S. 897, 908-09 (1984). There is no misconduct by the police in conducting "sting" operations such as that used to investigate suspected criminal activity in this case. To the extent the police (and the magistrate) misapprehended the law regarding the proper characterization of stolen property after it is recovered from a thief, such mistake was clearly made in good faith, and the harsh exclusionary mandates of *Franks* would not have any application in this case. We determine this issue to be without merit.

X.

The State's Closing Argument

Brewer claims that the prosecution improperly raised the specter of the World Trade Center bombing in closing argument for the sole purpose of exciting the passion of the jury. He cites in support of this proposition the case of *Griffin v. State*, which criticized the use of "inflammatory closing argument which lacked evidentiary support." *Griffin v. State*, 557 So. 2d 542, 553 (Miss. 1990). Brewer's only objection at trial was that an attempt "to draw analogy between this and a drawing of the World Trade Center [was] really bizarre." On appeal he asserts that the purpose of the argument was to link the defendant with international terrorism in the minds of the jurors.

Procedurally, the State says the objection did not present the issue of the inflammatory purposes of the remarks to the trial judge and, thus, did not preserve the issue for appellate review. In the context of this trial, we conclude that the objection was sufficient to put the inflammatory nature of the remarks in issue. Were this Court convinced that there was merit to the proposition that the prosecution, in its references to the World Trade Center, was attempting to somehow place Brewer on the same footing as the international terrorists responsible for the massive destruction of the World Trade Center bombing, then it would appear that the argument might have merit. However, we conclude from our review of the record that this was not the purpose for the reference.

Immediately prior to the injection of the World Trade Center into the prosecution's summation, the prosecutor had mentioned that the defendant had strenuously asserted throughout the trial that the materials confiscated were not peculiarly adapted to aid in the commission of a crime within the meaning of the statute. This was a fair characterization of one aspect of Brewer's defense. Brewer, at trial and before this Court, has advanced the proposition that a great part of the material was nothing more than common fertilizer. In the face of these assertions, the prosecutor was trying to graphically demonstrate for the jury that these materials *were* peculiarly adapted for criminal activity by giving an example that the jury would be able to understand. By way of analogy, in a prosecution for assault with a deadly weapon where a hatchet was used and the defendant repeatedly downplayed the weapon as merely a small tool to chop kindling, we do not think it would be reversible error for the prosecution, in its summation, to make reference to the Lizzie Borden homicides to illustrate a point.

There was not the slightest intimation that Brewer was engaged in similar activities or that he was of the same disposition as the perpetrators of the World Trade Center bombing. Given the wide latitude available to both sides in their summations, we do not find this to be the type of improper closing argument that would require a reversal of a conviction. *See Hiter v. State*, 660 So. 2d 961, 966 (Miss. 1995).

**THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY OF CONVICTION OF THE UNLAWFUL POSSESSION OF EXPLOSIVE DEVICES AND SENTENCE OF FOUR (4) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS ARE ASSESSED TO THE APPELLANT.**

**FRAISER, C.J., BRIDGES, P.J., PAYNE AND SOUTHWICK, JJ., CONCUR. DIAZ, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY THOMAS, P.J., BARBER, COLEMAN, AND KING, JJ.**

# IN THE COURT OF APPEALS 09/17/96

# OF THE

# STATE OF MISSISSIPPI

## NO. 93-KA-00676 COA

**HERBERT L. BREWER III**

**APPELLANT**

**v.**

**STATE OF MISSISSIPPI**

**APPELLEE**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

DIAZ, J., DISSENTING:

I regret that I cannot agree with the majority's decision. It is my opinion that the first warrant was invalid, thereby making any evidence obtained pursuant to the invalid warrant inadmissible. The record reveals that there were two search warrants issued. The search warrant in question was issued for the purpose of recovering a "stolen" gun sold to Brewer. To obtain this warrant, officer Beene submitted an affidavit. This affidavit asserted that Beene sold a "stolen" gun to Brewer. Based on this assertion, the magistrate issued the search warrant.

I disagree with the majority because the search warrant was issued based on the false assertion that there was a "stolen" gun in Brewer's possession when, in fact, the police knew that the gun was not stolen, but recovered property. Based on this, the first search warrant was invalid, and the explosives obtained therefrom, inadmissible.

Additionally, it is my opinion that the State greatly exceeded the permissible bounds of closing arguments when it presented sketches of the World Trade Center bombing. These sketches were in

no way relevant to the trial at hand, and their only purpose was to incite and enflame the jury. This improper conduct, coupled with the incorrect assertions contained in the affidavit whereby the search warrant was obtained, constitutes reversible error. Therefore, I respectfully dissent.

**THOMAS, P.J., BARBER, COLEMAN AND KING, JJ., JOIN THIS DISSENT.**